COURT DRAFT # 5

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. *05-*05-81116-CIV-HURLEY

LEE HENDELSON, individually and as
Personal Representative of the
Estate of ADAM HENDELSON,
        plaintiff,

vs.

ALZA CORPORATION and
JANSSEN PHARMACEUTICA PRODUCTS, LP,
        defendants.

_____/

## THE LAW

Members of the Jury:

I will now explain to you the rules of law that you must follow and apply in

deciding this case.

When I have finished you will go to the jury room and begin your discussions -

- what we call your deliberations.

1

### Duty To Follow Instructions

In deciding the case you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company.

In your deliberations you should consider only the evidence - - that is, the testimony of the witnesses and the exhibits I have admitted in the record - - but as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

2

Remember that anything the lawyers say is not evidence in the case. And, except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your decision concerning the facts. It is your own recollection and interpretation of the evidence that controls.

## Stipulations of Fact

When the attorneys on both sides stipulate or agree as to the existence of a fact, you must accept the stipulation as evidence and regard that fact as having been proved.

## Credibility Of Witnesses

Now, in saying that you must *consider* all of the evidence, I do not mean that you must *accept* all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular dispute is not controlling.

In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to

3

have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness' testimony differ from other testimony or other evidence?

## Impeachment Of Witnesses

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

4

### Expert Witnesses

You have heard opinion testimony on certain technical subjects from persons referred to as expert witnesses.

You may accept such opinion testimony, reject it, or give it the weight you think it deserves, considering the knowledge, skill, experience, training, or education of the witness, the reasons given by the witness for the opinion expressed, and all the other evidence in the case.

### Multiple Claims

In your deliberations, you  are to consider multiple claims that have been brought by the plaintiff against the defendants.  Although  these claims have been tried together, each claim  is separate  from the other, and each party is entitled to have you separately consider each claim as it affects that party.  Therefore, in your deliberations, you should consider the evidence as it relates to each claim separately, as you would had each claim been tried before you separately.

I will now explain these claims to you in more detail.

### Claims in this Case

As  indicated,  in  this  suit  the  plaintiff  Lee  Hendelson,  as  Personal Representative of the  Estate of Adam  Hendelson,  brings multiple  claims against the defendants ALZA Corporation and defendant Janssen  Pharmaceutica Products,

LP.  For the sake of  simplicity, the parties have agreed that  both  defendants shall

be  cumulatively referred to in  these instructions  as the  defendant  "ALZA."

The plaintiff's claims can be broken down into two separate categories: (1)

those based on strict liability, and (2) those based on negligence. Each category, in

turn, contains four separate distinct claims. So, in all, there are eight separate claims

that must be considered in this case. I will now describe each claim to you, starting

with the first category, i.e. strict liability.

Mr. Hendelson alleges that ALZA is strictly liable for the death of his son,

Adam Hendelson, because it placed the subject Duragesic Patch  on the market in a

defective condition  unreasonably  dangerous  to  the  user,  either by reason of (1) a

manufacturing defect, (2) a design defect, (3) a failure to adequately warn of the

danger of possible  patch leaks, or (4) a failure to adequately warn of  the danger of

contraindicated drug combinations, such as Fentanyl, Remeron and Celexa.

Now let me turn to the category of negligence claims.  Here, Mr. Hendelson

alleges that ALZA is liable for negligence, i.e. the failure to use reasonable  care, in

(1) the manufacture of  the  Duragesic Patch, (2) the design of the  Duragesic Patch,

(3) the failure to adequately warn of the danger of possible leaks in the Duragesic

Patch. or (4) the failure to adequately warn of the danger of certain contraindicated

drug combinations, such as Fentanyl, Remeron and Celexa.

6

Defendant ALZA denies all of these claims. It denies that the Duragesic Patch was defective or unreasonably dangerous, and denies that any defect in its product caused Adam Hendelson's death. It also denies that it was negligent in any respect.

### Strict Products Liability Claim

Le me focus, for a moment on the category of strict liability claims. The issues for your determination on plaintiff's strict products liability claims against the defendants are (1) whether the Duragesic patch sold and supplied by the defendants was defective when it left the possession of defendants, and, if so, (2) whether such defect was a legal cause of loss, injury or damage sustained by Adam Hendelson.

### A. Proof of Defect

There are three different ways a product may be considered "defective" for purposes of triggering strict products liability. First, a product may be defective by reason of a manufacturing defect. Second, a product may be defective by reason of a design defect. Third, a product may be defective by reason of inadequate warnings of non-obvious dangers associated with its use.

In this case, Mr. Hendelson alleges that the Duragesic Patch was defective in each of these respects. I will now discuss each one of these concepts with you in

7

more detail.

**(1)  Manufacturing Defect**: A product is defective  if  by reason of a manufacturing defect it is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting that condition.

A product is unreasonably dangerous because of a manufacturing defect if it does  not conform to its  intended  design and fails to perform as safely as the intended design would have performed.

**(2) Design Defect**:  As an alternative and independent basis of liability, a product may also be  defective if  by  reason of  its design  the product is in a condition  unreasonably  dangerous to the user, and  the product is expected  to and does reach the user without substantial change affecting that condition.

A product is unreasonably dangerous because of  its  design where (1)  the product fails to perform as safely as an ordinary consumer would expect when used as intended or in a  manner reasonably foreseeable by the manufacturer, or (2)  the risk of danger in the design outweighs the benefits.

Under either of these  tests, the dangerousness of  the product is to be determined  based on an objective standard, and not from the view point of any specific user.

8

Under the consumer expectation test, the defect is considered from the viewpoint of the ordinary consumer's expectations; under the risk-benefit test, the defect is considered from the viewpoint of the normal public expectation of danger.

### Inference of Defect

In order to prove that the Duragesic patch which Adam Hendelson wore was defective in design or manufacture under the tests I have just defined for you, it is not necessary for plaintiff to demonstrate the existence of a specific defect in the product. Under Florida law, where a plaintiff establishes that a product has malfunctioned in normal operation or use, a permissive inference of product defect arises.

So, in this case, if you find that the Duragesic patch which Adam Hendelson wore at the time of his death reflected a "normal use" of the product -- i.e. he was using the patch as prescribed by his treating physician and in accordance with manufacturer's labeling -- and you further find that the Duragesic patch malfunctioned by delivering a quantity of fentanyl in excess of the designed therapeutic range, you may infer that the patch was defective, unless, taking into consideration all of the evidence in the case, you conclude that the patch's failure to function as intended was not due to any product defect.

9

You will note that this inference is a permissive one, which means that it is one deduction which you may, but are not required, to draw from the circumstantial evidence in the case. If you find that the evidence supports this inference, you may consider it together with all of the other evidence in the case --including any evidence proffered by defendant ALZA on other possible explanations for the levels of fentanyl found in Adam Hendelson at the time of his death – in drawing your ultimate conclusion as to the existence of a defect in the Duragesic Patch at issue.

### (3) Failure to Warn:

Alternatively, a product is defective due to lack of warning or the provision of inadequate warnings if the product does not adequately warn of a non-obvious risk or dangerous propensity of the product which was known or knowable to the manufacturer in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of its manufacture and distribution.

You will note from the hand out that I have given you that the plaintiff has alleged two different failure to warn claims. The first, which I have listed as #3, is the allegation that the Duragesic Patch was defective because of the defendants' failure to warn about leaky patches. I have listed the second failure to warn claim as #4. Here, the plaintiff has alleged that the Duragesic Patch was defective because of

10

the defendants' failure to warn about using the Duragesic Patch in combination with other drugs like Celexa and Remeron. Separate and different legal principles govern each of failure-to-warn claim, and so it is important that we examine each one by itself.

### Failure to Warn of Patch Leaks

Le me start with the claim I have marked as #3, the allegation that the Duragesic patch was defective because of the defendants' failure to warn about foreseeable dangerous patch leaks. In the usual failure to warn claims involving prescription drugs, the manufacturer's duty to warn runs to the prescribing doctor. In other words, the focus is on what the manufacturer should have told the doctor about the product.

However, the allegation in this case about the necessity to warn of the danger of foreseeable dangerous patch leaks is different. Here, the manufacturer's duty to warn runs directly to the patient, because in this instance the prescribing doctor is not in a superior position to reduce the risks of harm associated with the product by following the manufacturer's instructions or warnings about prescribing the product.

Therefore, if the greater weight of the evidence shows that ALZA knew or should have known of the non-obvious risk of foreseeable dangerous patch leaks, or the propensity for dangerous patch leaks, prior to the time of Adam Hendelson's

death, and that it failed to adequately warn Adam Hendelson, a foreseeable patient and user, of this risk,  then your verdict should be  in favor of the plaintiff and against the defendant ALZA on the strict liability failure to warn/ leaking patch claim.

On the other hand, if the greater weight of the evidence does not show that ALZA knew or should have known of the  non-obvious risk of  foreseeable dangerous patch leaks or the  propensity for dangerous  patch leaks prior to the time of Adam Hendelson's death and failed to adequately warn Adam Hendelson of this risk, then your verdict on the strict liability failure to warn/ leaking patch claim  claim should be in favor of the defendant and against the plaintiff.

### Failure to Warn of Dangerous Drug Interactions

Next, let me turn to the failure to warn claim that I have listed as #4  - the allegation that the Duragesic Patch was defective because of ALZA's failure to warn about the danger of using  the Duragesic Patch in combination with other drugs like Celexa and Remeron.  This is the type of failure to warn claim where the manufacturer's duty runs to the prescribing doctor.  In  other words, this type of claim rests on the assertion that the  prescribing doctor should have been given additional information about the product  from the manufacturer which would have led him to act differently in making his prescription.

12

In order to prevail on this strict liability failure to warn/dangerous drug interaction claim, the plaintiff must show by the greater weight of the evidence:

(1) That ALZA knew or should have known of the risk of life threatening danger created by certain potentially lethal drug combinations, such as Fentanyl, Celexa and Remeron, and

(2) That ALZA failed to warn Dr. Tannenbaum, Adam Hendelson's prescribing physician, of this risk in the labeling and instructions provided with the product, and

(3) That Dr. Tannenbaum did not have substantially the same knowledge of the risks of the dangerous drug interaction that an adequate warning from ALZA would have provided, and

(4) That Dr. Tannenbaum would not have prescribed the Duragesic Patch for Adam Hendelson in the same manner in which it was prescribed in this case had he been provided with adequate warnings about the risks of dangerous drug interactions alleged in this case.

### Distinction between Strict Liability & Negligence

You will note that in strict product liability cases involving allegedly defective, unreasonably dangerous products, a manufacturer or distributor of a product may be held liable even though it was not negligent and exercised all

13

reasonable care in the design and manufacture of the product in question.

So, in this case, if you find that plaintiff has established the existence of a manufacturing defect, design defect or warning defect under the definitions which I have just supplied you, you may find defendant ALZA liable on the strict liability counts even if you do not find it liable on the negligent counts.

## B. Proof of Legal Cause

A defect in a product is a legal cause of loss, injury or damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such loss, injury or damage, so that it can reasonably be said that, but for the defect, the loss, injury or damage would not have occurred.

In order to be regarded as a legal cause of loss, injury or damage, a defect in a product need not be the only cause. A defect may be a legal cause of loss injury or damage even though it operates in combination with the act of another, some natural cause, or some other cause if such other cause occurs at the same time the defect has its effect and if the defect contributes substantially to producing such loss, injury or damage.

## Negligence Claim

Now, le me turn to the second category of claims at issue in this lawsuit – the negligence claims. As I mentioned earlier, there are three separate claims in this

14

category.

More specifically, the issues for your determination on plaintiff's negligence claims are (1) whether defendant ALZA was negligent in the manufacture of the Duragesic Patch at issue; (2) whether the defendant ALZA was negligent in the design of the Duragesic Patch at issue; (3) whether the defendant ALZA was negligent in failing to adequately warn patients of the dangers of patch leaks, or (4) whether defendant ALZA was negligent in failing to adequately warn prescribing physicians of the dangers of certain potentially lethal drug interactions, such as Fentanyl, Celexa and Remeron, and, if so, whether such negligence was a legal cause of death of Adam Hendelson.

### A. Proof of Negligence

Negligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like circumsta8nces. Negligence may consist either in doing something that a reasonably careful person would not do under like circumstances or in failing to do something that a reasonably careful person would do under like circumstances.

### B. Proof of Legal Cause

Negligence is a legal cause of death if it directly and in natural and continuous sequence produces or contributes substantially to producing the death, so that it can

15

reasonably be said that, but for the negligence, the death would not have occurred.

In order to be regarded as a legal cause of death, negligence need not be the only cause. Negligence may be a legal cause of death even though it operates in combination with some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing the death.

### C. Negligent Failure to Warn Claims

On the negligent failure to warn claims, you will again note from the hand out that I have given you that the plaintiff has alleged two different negligent failure to warn claims – first, an alleged negligent failure to warn about foreseeable dangerous patch leaks, and second, an alleged negligent failure to warn about dangerous drug contraindications, such as Fentanyl, Celexa and Remeron.

On the negligent failure to warn/leaky patch claim, if the greater weight of the evidence shows that ALZA knew or should have known of the risk of foreseeable dangerous patch leaks, or the propensity for dangerous patch leaks, prior to the time of Adam Hendelson's death, and that it failed to use reasonable care in warning foreseeable users, such as Adam Hendelson, of this risk, then you should find in favor of the plaintiff and against the defendant ALZA on the negligent failure to warn/ leaking patch claim.

16

On the other hand,   if the greater weight of the evidence does not show that ALZA knew or should have known of the non-obvious risk of patch leaks or the dangerous propensity  for patch leaks prior to the time of Adam Hendelson's death and failed to use reasonable care to adequately warn Adam Hendelson of this risk, then  your verdict on the negligence   failure to warn/ leaking patch claim   claim should be in favor of the defendant and against the plaintiff.

In contrast, in order to prevail on the  negligent failure to warn/dangerous drug contraindication claim, the plaintiff must show  by the greater weight of the evidence that:

(1)  ALZA knew or should have known of the risk of  life threatening danger created   by certain potentially lethal drug combinations, such as  Fentanyl, Celexa and Remeron, and

(2)   ALZA failed to adequately warn Dr. Tannenbaum, Adam Hendelson's prescribing physician, of this risk in the labeling and instructions provided with the product, and

(3)  Dr. Tannenbaum  did not have substantially the same  knowledge of the risks of the dangerous drug interaction  that an adequate warning from ALZA would have provided, and

17

(4)   Dr. Tannenbaum would not have prescribed the Duragesic Patch for Adam Hendelson in the same manner in which it was prescribed in this case had he been provided with adequate warnings about the risks of dangerous drug interactions alleged in this case.

## Caution

In considering the issue of product defect under either the strict liability claims or negligence claims of plaintiff, I wish to remind you of an instruction given earlier in the trial with reference to what was referred to as a "fold over" defect." The parties have agreed that the fold over defect was not present in the patch that Adam Hendelson was wearing at the time of his death.

I allowed you to hear testimony about a fold over defect only for the purpose of allowing you to assess the credibility of Mr. Holland in terms of his testimony regarding the adequacy of various testing procedures used by the company. This evidence should accordingly considered for purposes of assessing this credibility question, and no other purpose.

## Greater Weight of the Evidence

In this case it is the responsibility of the plaintiff to prove every essential element of every one of his claims by the "greater weight of the evidence."

18

The "greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.

If the greater weight of the evidence does not support *either* the strict liability claim *or* the negligence claim of the plaintiff, then your verdict should be for the defendants.

However, if the greater weight of the evidence does support *either* the strict liability claim *or* the negligence claim of the plaintiff against the defendant ALZA, then your verdict should be for the plaintiff and against the defendant on that claim.

### Damages

If your verdict is for the defendants, you will not consider the matter of damages. But, if you find for the plaintiff, Lee Hendelson, as personal representative of the Estate of Adam Hendelson, you should award the decedent's personal representative an amount of money that the greater weight of the evidence shows will fairly and adequately compensate the decedent's estate and the decedent's survivors for their damages, including any such damages that the estate and the survivors are reasonably certain to incur or experience in the future.

In determining any damages recoverable by the personal representative for the benefit of the decedent's estate, you shall consider the following elements:

(1) **The estate's loss of net accumulations**. "Net accumulations" is the part of Adam Hendelson's net income after taxes, including pension benefits, which Adam Hendelson would have left as part of his estate if he had lived his normal life expectancy;

**(2) The mental pain and suffering of the decedent's surviving father**: In determining any damages to be awarded the decedent's personal representative for the benefit of Lee Hendelson, the decedent's surviving father, you shall consider certain additional elements of damage for which there is no exact standard for fixing the compensation to be awarded.

Any such award should be fair and just in the light of the evidence regarding the following elements:

The mental pain and suffering of Lee Hendelson as a result of the injury and death of his child, Adam Hendelson. In determining the duration of mental pain and suffering, you may consider the life expectancy of Lee Hendelson, the surviving parent, together with the other evidence in the case.

## Separate Findings

Any damages that you find were sustained by the decedent's estate and by each survivor shall be separately stated in your verdict.

## Mortality Tables

In determining how long Adam Hendelson would have lived, had he lived out his normal life, you may consider his life expectancy at the time of his death. The mortality tables received in evidence may be considered in determining how long he may have been expected to live. Such tables are not binding on you but may be considered together with other evidence in the case bearing on his health, age and physical condition, before his death, in determining the probable length of his life.

In determining the duration of any future loss sustained by Lee Hendelson, as surviving parent of Adam Hendelson, by reason of the death of Adam Hendelson, you may consider the joint life expectancy of Lee Hendelson and Adam Hendelson. The joint life expectancy is that period of time when both Adam Hendelson and Lee Hendelson would have remained alive. The mortality tables received in evidence may be considered, together with the other evidence in the case, in determining how long each may have been expected to live.

## Reduction to Present Value

Any amount of damages which you allow for net accumulations of the Estate of Adam Hendelson should be reduced to its present money value and only the present money value of this future economic damage should be included in your verdict.

21

The present money value of future economic damages is the sum of money needed now which, together with what that sum will earn in the future, will compensate the personal representative of the decedent's estate for those losses as they would actually be experienced in future years.

## Punitive Damages

### Procedure

Your consideration of the punitive damage issue will be divided into two stages. In the first stage, you will decide the issue of plaintiff's entitlement to punitive damages. If you decide that punitive damages are warranted, we will then move to the second phase in which you will decide the amount of punitive damages which should be imposed.

In the second phase, which will be a relatively brief proceeding, the parties may present additional evidence and argument, and I will then give you additional instructions, following which you will then retire again to decide the amount of punitive damages appropriate to impose.

### Standard

If you find for the plaintiff and against defendant ALZA, and you also find by clear and convincing evidence shows that the defendant ALZA was guilty of intentional misconduct or gross negligence which was a substantial cause of loss,

injury or damage to plaintiff, then in your discretion you may also determine that punitive damages are warranted against defendant ALZA.

"Intentional misconduct" means that ALZA had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to plaintiff would result, and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

"Gross negligence" means that the conduct of ALZA was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety or rights of persons exposed to such conduct.

"Clear and convincing evidence" differs from the "greater weight of the evidence" in that it is more compelling and persuasive. "Greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case. In contrast, "clear and convincing evidence" is evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief or conviction, without hesitation, about the matter in issue.

### Duty To Deliberate

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

23

Any verdict you reach in the jury room must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are judges - - judges of the facts. Your only interest is to seek the truth from the evidence in the case.

### Election Of Foreperson

When you go to the jury room you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court. A form of verdict has been prepared for your convenience will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.